# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-3075, 10-3076, 10-3077,
    10-3078, 10-3106 & 10-3140

ROBERT TENNY, et al.,

*Plaintiffs-Appellants,*

*v.*

ROD R. BLAGOJEVICH, et al.,

*Defendants-Appellees.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10-CV-03683—**Charles R. Norgle, Sr.**, *Judge.*

No. 10-3169

MARCOS GRAY,

*Plaintiff-Appellant,*

*v.*

ROGER E. WALKER, JR., et al.

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10-CV-04637—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED JUNE 9, 2011—DECIDED AUGUST 25, 2011

Before MANION, WOOD, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.*    Illinois has a statutory cap on the price prison commissaries can charge inmates for any item purchased. The plaintiffs in these consolidated cases are seven inmates incarcerated at Stateville Correctional Center in Joliet, Illinois. They sued current and former officials in the Illinois Department of Corrections, and the former Governor, for marking up the price of commissary goods beyond that cap. In each case, the district court screened the complaint under 28 U.S.C. § 1915A and dismissed the case for failure to state a claim upon which relief may be granted. The plaintiffs appeal, framing the matter as a violation of their procedural due process rights under the Fourteenth Amendment. Because no pre-deprivation process could have predicted or prevented the alleged deprivation, and plaintiffs have not alleged the absence of adequate post-deprivation remedies, we affirm.

I.

By statute, Illinois caps the mark-up on goods sold at prison commissaries to inmates to 25% over the cost of goods sold (35% for tobacco products). 730 Ill. Comp. Stat. 5/3-7-2a. The mark-up covers the wages and benefits of commissary employees. *Id.* In November 2005, the Illinois Department of Corrections imposed a purported 3% mark-up, which was increased to 7% in early 2006. During an audit of the Department in June 2006, the Illinois Auditor General discovered that commissary

goods had already been marked up to the maximum 25%, and that the new 7% mark-up was on top of the existing mark-up—in violation of the Illinois statute. The Auditor General recommended that the Department conform its pricing policy to the statute or seek a formal opinion from the Attorney General.

Despite the Auditor General's findings and recommendations, the Department maintained the unlawful mark-ups. It informed the Auditor General that it "intended to work with other authoritative State agencies regarding a more refined interpretation of cost of goods." During his subsequent audit two years later, the Auditor General again found that "inmate commissary goods [were] marked up more than allowed by statute." The Department continues to maintain that commissary prices "have been determined by the Director to be in accordance with State Statutes."

The plaintiffs each filed grievances within the prison system. All appeals were denied. The Stateville prison determined that the pricing policy was controlled by the Department, and the Department concluded that the policy complied with state law. The plaintiffs then filed these suits in federal district court under 42 U.S.C. § 1983, alleging violations of their federal and state constitutional rights. Six of them filed a single complaint on behalf of themselves, seeking to represent all similarly situated inmates (*Tenny, et al. v. Blagojevich, et al.*). The last plaintiff filed his own complaint, making substantially the same allegations as the first (*Gray v. Walker,*

*et al.*). In each case, the district court screened and dis-
missed the complaint under 28 U.S.C. § 1915A, finding
that the plaintiffs had failed to state a claim because
they had no federal constitutional right to commissary
access nor to particular prices for commissary items.[1]
The district court did not address the Illinois constitu-
tional claims in either case.

## II.

On appeal, the plaintiffs claim that the Department
is violating their constitutional right to procedural due
process under the Fourteenth Amendment by depriving
them of a protected property interest (their state-created
right to a cap on the mark-up of commissary items)
without due process of law. A procedural due process
violation occurs when (1) conduct by someone acting
under the color of state law (2) deprives the plaintiff of
a protected property interest (3) without due process of
law. *Germano v. Winnebago County, Ill.*, 403 F.3d 926,
927 (7th Cir. 2005). A protected property interest is a
"legitimate claim of entitlement" that is "defined by
existing rules or understandings that stem from an in-
dependent source such as state law." *Board of Regents
v. Roth*, 408 U.S. 564, 577 (1972); *Germano*, 403 F.3d at 927.

---

[1] Because of the § 1915A dismissal, the defendants in these
cases were never served notice of the complaint nor the
appeal. At our invitation, the Illinois Attorney General submit-
ted a response brief.

We review de novo the district court's dismissal under § 1915A. *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009).

The plaintiffs draw their argument extensively from *Germano*, 403 F.3d 926. In that case, a plaintiff class of retired deputies of the county sheriff's department sued the county, alleging that county policy violated Illinois law. *Id.* at 927. Illinois law provides that counties cannot offer a group health insurance policy to its active deputies unless it also allows retired deputies to continue on the policy at the same premium rate set for active deputies. *Id.* The plaintiffs alleged in part that the county was requiring retired deputies to pay higher premiums than active deputies. *Id.* The court concluded that the Illinois statutes in question did create property interests for retired deputies and that it did not doubt that "[c]ounty policy is in violation of this state law." *Id.* at 927-28.

The plaintiffs argue that inmates have a similar property interest in the caps on commissary prices: although the prisons are not required to provide commissary access, where they do provide access, the plaintiffs claim they have a property interest created by the statutory cap.[2] The Attorney General cites *Ashley v. Snyder*, 739

---

[2] The opportunity to choose to spend money at the prison commissary at a price higher than the statutory cap is relatively minor compared to the denial of a retirement benefit that the county was required to provide for retired deputies.

(continued...)

N.E.2d 897 (Ill. App. 2000), which held that Illinois prison regulations do not create substantive interests protected under the Due Process clause. If *Ashley* were an independent interpretation of the Illinois prison code, that interpretation would conclusively establish that the plaintiffs have no protected property interest. But *Ashley* merely follows *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995), in declaring that prison regulations do not generally create protected liberty interests and does not address whether there may be protected property interests.[3]

---

[2] (...continued)

Nevertheless, hypothetically, and for the sake of this argument, we will apply the analysis as if the property interest for the prison inmates is the same as for the retired deputies. That assumption leads to the question of whether the statute that caps commissary markups was designed to benefit prison inmates rather than simply providing guidelines for prison operations.

[3] In *Sandin*, the Supreme Court held that prison regulations do not themselves create protected *liberty* interests other than "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 483-84. The Attorney General makes a strong case that the reasoning of *Sandin* (although perhaps not in all of the particulars) should extend to statutorily created property interests as well. Because we decide this case on other grounds, we need not take a position on this issue, which has split the circuits. *Compare Cosco*

(continued...)

But even assuming a protected property interest exists, the plaintiffs' analogy to *Germano* actually undermines their claim. After recognizing a property interest, the court in *Germano* held that the county's actions were "random and unauthorized" within the meaning of *Parratt v. Taylor*, 451 U.S. 527, 541 (1981),[4] and *Easter House v. Felder*, 910 F.2d 1387, 1404 (7th Cir. 1990) (en banc), and thus due process did not require any sort of hearing before the alleged deprivation occurred. The court explained that "[t]he county's decision to act contrary to this state law was not authorized and could not have been predicted or prevented by the state through any sort of pre-deprivation hearing." *Id.* at 929. In other words, "no process afforded plaintiff would have been sufficient to establish that the county could charge the retired deputies rates different than those charged non-retired deputies." *Id.* The court dismissed the case.

This case fails for the same reasons that *Germano* failed. The central question, as we recognized there, is whether the Department's pricing policy in the prison

[3] (...continued)
*v. Uphoff*, 195 F.3d 1221, 1223-24 (10th Cir. 1999) (extending *Sandin*'s rationale to property interests), *with Handberry v. Thompson*, 446 F.3d 335, 353 n.6 (2d Cir. 2006) (noting that *Sandin* does not apply to property interests) *and Bulger v. United States*, 65 F.3d 48, 50 (5th Cir. 1995) (same).

[4] *Parratt* was overruled on another point of law by *Daniels v. Williams*, 474 U.S. 327 (1986).

commissary gives rise to the type of deprivation that
might be prevented by some pre-deprivation process.
*See, e.g.*, *Ellis v. Sheahan*, 412 F.3d 754, 757-58 (7th Cir.
2005). Here, as in *Germano*, the answer is no. The plain-
tiffs suggest that some sort of notice-and-comment
rulemaking might satisfy constitutional due process. The
prospect of a federal court ordering a state to create
such a procedure risks turning procedural due process
into a constitutionally mandated state administrative
procedure act. But even if this were possible, notice-and-
comment rulemaking would not satisfy the plaintiffs'
complaints. It could not prevent the Department from
violating Illinois law any more than it could permit such
a violation. Indeed, how could *any* process initiated by
the Department permit it to exceed the limitations set
by statute? The plaintiffs also suggest that Illinois should
have required the Attorney General to approve com-
missary pricing policy changes, at least once it became
clear that the Department had no intention of complying
with state law. What, then, if the Attorney General ap-
proved the mark-ups in violation of state law? These
latter suggestions come close to asking us to mandate
that Illinois comply with its own laws, which we will
not do. *See infra* at p. 8.

Where meaningful pre-deprivation review would either
be impossible or ineffectual, adequate post-deprivation
remedies may satisfy constitutional due process require-
ments. *See Parratt*, 451 U.S. at 539. The plaintiffs have
not alleged that post-deprivation remedies are inade-
quate, which is fatal to their claim at this juncture. *See*

*LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 944 (7th Cir. 2010) ("[The plaintiff] alleges neither that it availed itself of state post-deprivation remedies, nor that the available remedies are inadequate, as it was required to do." (citation omitted)).

Nor do we think that amending the complaints to include such an allegation would be a simple fix, as the plaintiffs aver. In their reply brief, for the first time in this case, the plaintiffs argue that they have no viable post-deprivation remedy: the Illinois Court of Claims, which has exclusive jurisdiction over monetary claims against the State, does not have jurisdiction to "consider the constitutionality or validity of regulations or statutes." *Tedder v. State*, 40 Ill. Ct. Cl. 201 (1998). While that may be relevant to the post-deprivation remedy analysis, it does not end it. First, the plaintiffs have already had some post-deprivation remedies—they allege that they have complained under the prison system grievance procedure and appealed the denial of those claims. They have thus had the opportunity to present their arguments to the Department itself, which is as much as their proposal for notice-and-comment rulemaking would achieve. Second, it is not at all clear that the plaintiffs' claims in the Court of Claims would necessarily involve a determination of the validity or constitutionality of a statute or regulation. They allege that the Department's pricing policy violates Illinois law. But we do not know what the Court of Claims considers a regulation, and the pricing policy in this case, which is not found in the Illinois Administrative Code,

may or may not fall into that category. Finally, even if the plaintiffs are correct that the Court of Claims will not consider a claim based on the illegality of a prison policy, other Illinois courts can and will entertain such claims and may grant injunctive and declaratory relief. *E.g., Hadley v. Dept. of Corrections*, 840 N.E.2d 748 (Ill. App. Ct. 2005) (holding that injunctive relief was appropriate for challenge to validity of prison policy and that medical co-payment charges for indigent inmates violated Illinois law), *aff'd* 864 N.E.2d 162 (Ill. 2007). While the path to relief—including potential monetary awards if and when the current commissary mark-up policy is declared illegal—may be circuitous, this does not make it inadequate. We are thus satisfied that the plaintiffs have adequate post-deprivation remedies in state court, which dooms their constitutional due process claims.

Put another way, this case is really about a substantive violation of Illinois law, not about the procedures required before the plaintiffs can be deprived of a property interest. The plaintiffs' grievance is about *what* was done (the mark-up in excess of 25%), not the *procedures* followed to do it. And that is exactly what this court, and the Supreme Court, have worried "would make of the Fourteenth Amendment a font of tort law," or in this case administrative law," to be superimposed upon whatever systems may already be administered by the States." *Easter House*, 910 F.2d at 1396 (quoting *Parratt*, 451 U.S. at 544). Federal courts do not sit to compel a state's compliance with its own law. *Cf.* U.S.

Const., amend. XI; *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (explaining difference between a suit alleging violation of procedural due process and a suit seeking to enforce state law). Even assuming the plaintiffs were deprived of a property interest created by state law, "[f]ailure to implement state law violates that state law, not the Constitution; the remedy lies in state court." *Germano*, 403 F.3d at 929 (citation omitted). The plaintiffs' federal constitutional claims fail.

### III.

For these reasons, we hold that the plaintiffs in these consolidated appeals have not alleged a violation of due process under the Fourteenth Amendment. Even assuming that the prison regulation in this case created a protected property interest in a certain cap on the mark-up of commissary goods, the plaintiffs have not alleged that post-deprivation remedies are inadequate to satisfy constitutional due process requirements. But while the federal constitutional claims were correctly dismissed on the merits, the independent state constitutional claims were not addressed. We therefore REMAND both cases to the district court with instructions to dismiss the state law claims without prejudice.