In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1490

SAMMIE L. BOOKER-EL,

*Plaintiff-Appellant,*

*v.*

SUPERINTENDENT, INDIANA STATE PRISON and
ALL AGENTS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:10-CV-017—**Robert L. Miller, Jr.**, *Judge.*

ARGUED NOVEMBER 29, 2011—DECIDED FEBRUARY 9, 2012

Before POSNER and KANNE, *Circuit Judges*, and PRATT,
*District Judge.*<sup>*</sup>

KANNE, *Circuit Judge.* Sammie L. Booker-El, an inmate
incarcerated in Indiana State Prison, alleges that prison
officials misappropriated funds intended by statute to

---

\* The Honorable Tanya W. Pratt, District Judge for the
Southern District of Indiana, sitting by designation.

be used for the inmates' benefit without due process of law. The district court dismissed Booker-El's complaint, finding that he did not have a protected property interest in the funds. We affirm.

## I. BACKGROUND

As required by state law, Indiana State Prison maintains an inmates' recreation fund. *See* Ind. Code § 4-24-6-6(a)(3). The inmates' recreation fund was designed to accrue money from sources outside of the state budget, such as profits from a prison commissary.[1] Prison officials are to then utilize this money for the inmates' benefit by purchasing recreational items or using the funds for a purpose not already covered under existing state appropriations. Specifically, § 4-24-6-6 provides that once money has accrued to the fund, it "shall be used, at the discretion of the superintendent or warden . . .

---

[1] Section 4-24-6-7 provides that "[m]oney may accrue" to the fund from the following sources: "(1) Gifts to the fund. (2) Profits from the operation of a commissary or canteen. (3) Interest earned by deposit of trust funds in public depositories, or income derived from trust funds invested in United States government securities . . . . (4) Sale of items produced in occupational therapy. (5) Income derived from any kind of benefit entertainment for the inmates or patients. (6) Any other money derived from any source that is not legally prohibited. (7) Any money derived from the income of any trust fund which has been deposited in any special fund of the institution."

for the direct benefit of persons who are inmates or patients in such institutions, and shall not be used for any purposes which are covered by state appropriations." *Id.* § 4-24-6-6(b). The statute then provides a non-exhaustive list of acceptable expenditures for the fund.[2]

Booker-El claims that for the past ten years, prison officials have misappropriated proceeds from the fund. These alleged misappropriations range from prison officials diverting money in the fund for their own personal uses, to using the fund for purposes already covered under existing state allocations—such as the purchase of cameras and other devices enhancing prison security.

Accordingly, Booker-El filed a *pro se* prisoner complaint pursuant to 42 U.S.C. § 1983 in the Northern District of Indiana, suing the Superintendent charged with managing operations of the Indiana State Prison and his current and former employees. In his complaint, Booker-El claimed that the prison officials' misappropriation of the inmates' recreation fund denied him of

---

[2] These possible expenditures include: "(1) purchased entertainment; (2) magazine subscriptions for the libraries, wards, or units of such institutions; (3) special recreational equipment and supplies; (4) special foods for parties or celebrations; (5) educational materials; (6) phonograph records, televisions, radios, and similar items when the items cannot be purchased from regular appropriations; and (7) any other purposes not covered by regular appropriations." Ind. Code § 4-24-6-6(c).

his property interest in the fund without due process of law.

On January 22, 2010, the district court screened and dismissed the complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief can be granted. The court held that Booker-El did not have a statutorily protected property interest in the inmates' recreation fund and, consequently, there was no basis on which it could review his claim. The district court reasoned that because neither the Constitution nor the laws of the United States mandated that state penal facilities maintain an inmates' recreation fund or dictate how money in such funds be spent, Booker-El could only state a claim if Indiana law provided the inmates with a property interest in the fund. After examining § 4-24-6-6, the court concluded that the statute did not give inmates a property interest in the fund, and thus dismissed the case. *See Booker v. Superintendent*, No. 3:10-CV-017, 2010 WL 339093 (N.D. Ind. Jan. 22, 2010). Booker-El now appeals.

## II. ANALYSIS

We review *de novo* the district court's dismissal for failure to state a claim under § 1915A, *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011), and apply the same standard used for evaluating dismissals under Rule 12(b)(6), *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). We must accept the facts alleged in the complaint as true and draw all reasonable inferences in Booker-El's favor.

*Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 820 (7th Cir. 2009).

### A.  Standing

Although the district court did not specifically address the matter, Booker-El wisely raises the issue of standing in his opening brief. *See Rhodes v. Johnson*, 153 F.3d 785, 787 (7th Cir. 1998) ("[W]e hope that litigants will be mindful of our obligation to satisfy ourselves of our jurisdiction and when, in cases like this, standing is an obvious issue, they will cite to the relevant parts of the record to avoid wasting judicial time and resources."); *see also Schirmer v. Nagode*, 621 F.3d 581, 584 (7th Cir. 2010) ("[W]e must consider this jurisdictional issue even though the parties have not raised it.").

Article III of the Constitution confines the federal courts to adjudicating actual "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. "[T]he requirements of Article III case-or-controversy standing are threefold: (1) an injury in-fact; (2) fairly traceable to the defendant's action; and (3) capable of being redressed by a favorable decision from the court." *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Here, the main issue for standing purposes is whether Booker-El has suffered an injury in-fact. "[T]he injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm that the

plaintiff would have otherwise faced, absent the defendant's actions." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007). Momentarily assuming that § 4-24-6-6 confers a property interest to the inmates, as alleged in the complaint, Booker-El would have a high probability of receiving benefits under a properly administered recreation fund. Because Booker-El would face a substantial risk in losing benefits to which he was entitled, misappropriation of these funds thus creates a substantial risk of harm.

The Indiana Attorney General, as amicus curiae in support of the prison officials, argues that Booker-El lacks standing because he has no property interest in the inmates' recreation fund. Without a property interest, amicus curiae contends, Booker-El has no remedy in federal court and thus no standing to bring a claim. But this argument conflates standing with the merits of the case. *See Arreola v. Godinez*, 546 F.3d 788, 794-95 (7th Cir. 2008) ("Although the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing. Standing is a prerequisite to *filing suit*, while the underlying merits of a claim . . . determine whether the plaintiff is *entitled to relief*."); *see also Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) ("[W]hile a litigant need not definitively establish that a right of his has been infringed, he must have a colorable *claim* to such a right to satisfy Article III.") (internal quotation marks omitted). Booker-El has a colorable claim to a property interest in the inmates' recreation fund. Were we to require more than a colorable claim, we would decide the merits of the case before satisfying ourselves of standing.

*B. Property Interest*

In order to state a claim for a procedural due process violation of a property right, Booker-El must establish: (1) a protected property interest; (2) a deprivation of that property interest by someone acting under the color of state law; and (3) a denial of due process. *Tenny v. Blagojevich*, 659 F.3d 578, 581 (7th Cir. 2011). In any due process case alleging a deprivation of property, "the threshold question is whether a protected property interest actually exists." *Cole v. Milwaukee Area Technical Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011).

"To claim a property interest protected by the Fourteenth Amendment, a person must have more than a unilateral expectation of the claimed interest. He must, instead, have a legitimate claim of entitlement to it." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (internal quotation marks and punctuation omitted) (*quoting Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). A legitimate claim of entitlement is "defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577; *Tenny*, 659 F.3d at 581. A protected property interest exists only when the state's discretion is "clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met." *Brown v. City of Michigan City, Ind.*, 462 F.3d 720, 729 (7th Cir. 2006) (internal quotation marks omitted).

Booker-El argues that the district court erred in dismissing his complaint because Indiana state law creates a protected interest in the inmates' recreation fund.

He contends that § 4-24-6-6 imposes a mandatory obligation for prison officials to spend the fund for the benefit of inmates. Specifically, Booker-El points to the direction that "[t]hese funds shall be used . . . for the direct benefit of persons who are inmates" in § 4-24-6-6(b). The word "shall," absent some other clearly expressed intent, is a mandatory term that does not confer discretion upon an administrative decision maker interpreting such language. *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion."). Because § 4-24-6-6 mandates that the funds be spent for the benefit of the inmates, Booker-El concludes, the discretion of prison officials is sufficiently limited to create a protected property interest. We disagree.

The text of § 4-24-6-6 requires only that, if prison officials in their discretion decide to utilize money from the inmates' recreation fund, then it must be spent for the direct benefit of prisoners. What § 4-24-6-6 does not impose, however, is any obligation for prison officials to expend these funds within a given period of time. Conceivably, prison officials could decline to use money from the recreation fund indefinitely. Thus, prison officials were under no obligation to ever use the money in the inmates' recreation fund for the benefit of Booker-El or any other inmate in Indiana State Prison.

Moreover, § 4-24-6-11 gives prison officials discretion to transfer a recreation fund established by § 4-24-6-6 from one institution to another without consulting any

inmate.[3] Therefore, prison officials were free to transfer the entirety of the inmates' recreation fund at the Indiana State Prison to another institution at any time without notice. Given this discretion, Booker-El has no legitimate expectation to any benefit derived from the inmates' recreation fund, and thus no protected property interest.

Booker-El also points to a decision by the United States Court of Appeals for the Fifth Circuit in *Eubanks v. McCotter*, 802 F.2d 790, 794 (5th Cir. 1986), to support his argument that he has a property right in the inmates' recreation fund. In *Eubanks*, a Texas prisoner claimed that the state misappropriated the inmates' property interest in an "Education and Recreation Fund" without affording due process. The Texas regulation provided that the funds "are used to complement treatment programs for the inmates." 37 Tex. Admin. Code § 61.26 (1989) (repealed 1994). The district court dismissed the case as frivolous, but the Fifth Circuit held that the claim was "not frivolous on its face" and reversed. *Eubanks*, 802 F.2d at 794. But in so holding, the Fifth Circuit found only that the prisoner's claims were "minimally sufficient to require a decision on the merits," and expressly declined to address the merits of the prisoner's claim. *Id.* Thus, it is not clear how *Eubanks* supports

---

[3] Under § 4-24-6-11, prison officials "may transfer money from the institution's fund to one (1) or more other funds established under section 6 of this chapter." The only condition placed on these transferred funds is that "[t]he institution receiving the transferred money shall use the transferred money in conformity with section 6 of this chapter." *Id.*

Booker-El's claim to a property interest; *Eubanks* held only that the inmate in question was entitled to a decision on the merits, and that is exactly what Booker-El received.

### III. CONCLUSION

Because we find that Booker-El has no property interest in the inmates' recreation fund, we AFFIRM the judgment of the district court.