NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0268n.06

No. 21-4129

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 07, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PATRICK BROOKS; ANGELA BROOKS; CONNOR WEBNER; TONJA BACK; JAMES BACK; MICHAEL TINCH; SHANNON TINCH; KAREN FRANK; BRET FRANK, | ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| BUTLER COUNTY, OHIO; BUTLER COUNTY BOARD OF ZONING APPEALS; ALAN DANIEL, | ) ) | |
| Defendants-Appellees, | ) ) ) | OPINION |
| CD DG GERMANTOWN, LLC, | ) ) | |
| Intervenor-Appellee. | ) | |

Before: SILER, GIBBONS, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** In 2021, Alan Daniel cast a decisive vote as a member of the Butler County Board of Zoning Appeals, approving a property developer's requested variances. Nearby residential property owners—Patrick Brooks, Angela Brooks, Tonja Back, James Back, Connor Webner, Michael Tinch, Shannon Tinch, Karen Frank, and Bret Frank (collectively, the Residents)—later learned that Daniel was not a disinterested decisionmaker: Daniel's son owned the property, and Daniel held a mortgage on it when the vote occurred. Concerned about the approved variances' impact on their own properties, the Residents sued Butler County, the Board of Zoning Appeals, and Daniel in federal court. They alleged a violation of their constitutional procedural due process rights and sought preliminary and permanent injunctions to halt the implementation of the variances. The property developer intervened. The

district court denied the Residents' motion for a preliminary injunction, and this appeal followed.

For the reasons stated below, we **AFFIRM** the district court's decision.

## I. BACKGROUND

The Ohio Revised Code grants counties authority over most land use and zoning decisions with certain required procedural baselines. *See generally* Ohio Rev. Code §§ 303.01–303.99. Counties develop their own zoning resolutions that provide the acceptable and prohibited uses for land within their territory. *See id.* § 303.05–303.11. Deviations from a zoning resolution are permitted with the blessing of a county's Board of Zoning Appeals. *Id.* at § 303.14. The Boards can authorize variances from zoning requirements that are not "contrary to the public interest" and "where, owing to special conditions, a literal enforcement of the resolution will result in unnecessary hardship." *Id.* § 303.14(b). To grant such variances, however, the Board must hold public hearings on zoning appeals, provide notice to those with an interest in such hearings, and issue decisions within a reasonable time after hearings. *Id.* § 303.15; *see also id.* § 303.14 (defining the powers and duties of a county zoning board of appeals). All meetings must be open to the public, and "any person may appear in person or by attorney" to challenge a proposed variance. *Id.* § 303.15.

Pursuant to these state laws, Butler County has a Rural Zoning Resolution outlining its land-use plan and the rules for modifying zoning decisions. *See generally* Butler County, Ohio Rule Zoning Resolution [hereinafter, Zoning Resolution] (Jan. 10, 2013), https://development.butlercountyohio.org/content/txtcontent/plan/documents/Rural_Zonging_Re solution_2013_updated_000.pdf. The Resolution defines numerous zoning districts, such as A-1 Agricultural Districts and M-2 General Industrial Districts. Relevant to this case, the Resolution provides for B-2 Community Business Districts, which are intended "to reserve certain land areas

for community and highway oriented retail and service establishments which serve the residents of a number of neighborhoods." *Id.* § 16.01. Permitted uses include "[a]ny retail and/or service uses including, but not limited to . . . offices and professional services and the like, supplying commodities or performing services primarily for the residents of a portion of the County." *Id.* § 16.0201. Among other restrictions on the land, no more than ten percent of parking may be in the front of property zoned for a B-2 District. *Id.* § 16.0503. Property owners must also maintain a landscape buffer to separate lot lines of their property adjacent to a residential district. *Id.* § 16.0509.

In keeping with state law, Butler County also has a Board of Zoning Appeals (BZA) empowered to grant variances from the Resolution's zoning requirements if enforcing a particular requirement would "result in unnecessary hardship." Ohio Rev. Code. § 303.14. The BZA may grant a variance if it "will not be contrary to the public interest," and variance applicants need show only "by a preponderance of the evidence that he has or will encounter practical difficulties in the use of his property." Zoning Resolution § 26.82. Although this portion of the Zoning Resolution affords the BZA discretion in granting variances, the Board must consider at a minimum:

a. Whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance;

b. Whether the variance is substantial;

c. Whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance;

d. Whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, and garbage);

e. Whether the property owner purchased the property with knowledge of the zoning restriction;

  f.  Whether the property owner's predicament can feasibly be obviated through some method other than a variance;

  g.  Whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance

*Id.* The Resolution also tracks Ohio's statutory requirements for hearings and notice of applications and appeals. *See id.* § 26.33.

### A. The BZA Grants Variances for 8383 Keister Road

Although residential property surrounds the parcel, 8383 Keister Road (the Property) is and throughout this dispute has been zoned as part of a B-2 Community Business District. Patrick Brooks, Angela Brooks, Tonja Back, and James Back—several plaintiffs in this case—live on adjacent properties. Connor Webner, Michael Tinch, Shannon Tinch, Karen Frank, and Bret Frank—the remaining plaintiffs—live close to a block away from the Property. In 2013, the Property's owner, Alan Daniel, transferred it to his son, Todd Daniel, and simultaneously took a mortgage interest as the mortgagee. The Residents allege that both men retained these proprietary interests in the land until at least February 16, 2021.

In November 2020, CD DG Germantown, LLC (Germantown) contracted to build a Dollar General store on the Property and entered a lease agreement with a tenant to operate the proposed store. Included in the agreement was a liquidated damages provision that required Germantown to pay $897.60 for each day after January 13, 2022, that the Property was not delivered to the tenant.

Developing the land to be suitable for the proposed Dollar General, however, required adjustments to the applicable zoning requirements. Germantown sought five variances from the BZA: (1) a reduction in the number of parking spots required; (2) an allowance for more than ten percent of the parking to be in front of the store; (3) the waiver of a setback requirement for the

parking lot; (4) the waiver of a setback requirement for the front of the store; and (5) permission to erect a privacy fence in lieu of required landscaping. The adjacent landowners received notice through the mail, and a local paper also carried notice of the hearing and proposed variances.

Alan Daniel, despite having a financial interest in 8383 Keister Road, played a key role in determining whether Germantown would receive the variances. At the time, he was one member of the five-member BZA. The BZA's bylaws require a quorum of three to approve variances, Zoning Resolution § 26.22, and Daniel was the necessary third board member on the evening that the BZA considered Germantown's application, as two other members were absent. Rather than recuse himself, Daniel voted along with the other two present board members in favor of granting the variances. The Residents allege that Daniel still held a mortgage interest on the property at the time. No one at the hearing objected to Daniel's participation, nor did anyone object to Germantown's application. None of the Residents attended the BZA meeting or submitted comments on the proposal.

**B. Procedural History**

Months after the hearing, the Residents learned of Daniel's apparent conflict of interest. They informed Butler County prosecutors of Daniel's self-dealing, but the office declined to bring charges. In October 2021, eight months after the BZA voted in favor of granting the variances, the Residents sued Butler County, the BZA, and Alan Daniel in his official and individual capacities. They asserted a claim for violation of their procedural due process rights under the Fourteenth Amendment, seeking injunctive relief to invalidate issuance of the variances, a declaratory judgment, and damages. They also moved for a temporary restraining order and a preliminary injunction. After an informal telephonic hearing on October 18, the district court granted the motion for a temporary restraining order in part. The district court's October 20 order

enjoined the variances and permits issued to effectuate those variances until November 17, 2021. Soon after, Germantown intervened and opposed the pending motion for a preliminary injunction. Butler County and the BZA also opposed the injunction. Germantown then filed a motion to dismiss the Residents' complaint for lack of subject matter jurisdiction and failure to state a claim.

On November 16, 2021, the district court denied the motion for a preliminary injunction. The court concluded that the Residents were unlikely to succeed on the merits of their due process claim because they lacked a protectable property interest. Relying on Sixth Circuit precedent on due process challenges to zoning decisions, the district court explained that the Residents could not have a protected property interest in the variance decisions because whether to grant or deny a variance is discretionary and no party can claim entitlement to a particular outcome. The Residents filed this timely appeal. A motions panel denied the Residents' motion for an injunction pending appeal and echoed the district court's conclusion that because the Residents lack a property interest, they are unlikely to succeed on the merits.

## II ANALYSIS

Under 28 U.S.C. § 1292(a)(1), this court has jurisdiction to hear denials of preliminary injunctions. Because Germantown has raised a standing challenge in its response to the Residents' appeal, however, we also consider that threshold issue. *See City of Cleveland v. Ohio*, 508 F.3d 827, 835 (6th Cir. 2007). Therefore, we review de novo whether the Residents have "allege[d] personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598 (2007) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "'The party invoking federal jurisdiction bears the burden of establishing' standing." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013)).

An Article III injury requires the plaintiff to show "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Satisfying the particularized element requires allegations that harm was personal to the plaintiff, not generalized. *See Lance v. Coffman*, 549 U.S. 437, 439–40 (2007) (per curiam). The concrete element requires a plaintiff to allege an injury that is "real and not abstract," which usually requires showing that the injury is of a type traditionally redressed by the courts. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 340). A legally protected interest requires allegations that the plaintiff has a right to relief if the court accepts the plaintiff's interpretation of the constitutional or statutory laws on which the complaint relies. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89–90 (1998) (citing *Bell v. Hood*, 327 U.S. 678, 682–83, 685 (1946)). "[O]nce the plaintiff has alleged a 'colorable' or 'arguable' claim that the defendant has invaded a legally protected interest, the plaintiff has met" the requirement of plausibly alleging injury. *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 489 (6th Cir. 2021) (citing *Reoforce, Inc. v. United States*, 853 F.3d 1249, 1264 (Fed. Cir. 2017); *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 900 (7th Cir. 2012)).

We are cautious with this analysis because injury in fact and the merits of whether a protected property interest exists when a party brings a procedural due process claim are often intertwined. The two are separate analyses, however, and "just because a plaintiff's claim might fail on the *merits* does not deprive the plaintiff of *standing* to assert it." *Id.* (citing *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018)). "Only if the claimed protected interest is 'wholly insubstantial and frivolous' does a claim's failure on its merits turn into a jurisdictional defect."

*Id.* (quoting *Steel Co.*, 523 U.S. at 89) (citing *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2016) (en banc); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (per curiam)).

Our approach is like that of the Seventh Circuit, which draws a sharp distinction between standing and property-right analyses. In *Booker-El v. Superintendent, Indiana State Prison*, the Seventh Circuit held that because Indiana law did not give an incarcerated plaintiff a protected property interest in a general recreation fund held for the benefit of prison inmates, he could not state a procedural due process claim against the prison administrators. 668 F.3d 896, 900–01 (7th Cir. 2012). But the court also rejected the defendants' challenge to the plaintiff's standing, concluding that the plaintiff had shown injury. *Id.* at 900. The Seventh Circuit has explained that "it is not unusual for the distinction between standing and the merits to cause conceptual trouble when a plaintiff alleges the deprivation of a dubious property or liberty interest." *Protect Our Parks, Inc. v. Chi. Park Dist.*, 971 F.3d 722, 736 (7th Cir. 2020). We reached a similar decision in *CHKRS, LLC*, in analyzing standing and the existence of a property interest separately in the context of a takings claim. 984 F.3d at 486.

With this in mind, we proceed to our familiar Article III analysis. *See Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *see also Clapper*, 568 U.S. at 409. Germantown asserts that the Residents have failed to show either that they have suffered an injury or face an impending threatened injury sufficient to meet this burden. The injury-in-fact prong necessitates allegations of a sufficient "personal stake in the outcome of the controversy." *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 318 (6th Cir. 2005) (quoting *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994)). Germantown points to *Center for Powell Crossing, LLC v. Ebersole*, 696 F. App'x 702 (6th Cir. 2017), to

support its assertion that the Residents have not established such a personal stake. In *Ebersole*, after the city had authorized a high-density housing development downtown, a Powell, Ohio homeowner sponsored a petition drive to place on the ballot a proposed city charter amendment for a new comprehensive land-use plan. *Id.* at 704. The amendment would have prohibited the approved development. *Id.* After a state court ruling placed the amendment on the ballot, the developer challenged the amendment in federal court, and the homeowner tried to intervene. *Id.* We concluded that the homeowner lacked Article III standing to intervene, rejecting the homeowner's argument that the development risk of increasing "crime, blight, air pollution, parking, traffic, noise, and a resulting loss of quiet enjoyment of his property" constituted a sufficient injury. *Id.* at 706. It was key that the homeowner's "residence [was] nearly a mile by car from the development site," and its cul-de-sac location meant the homeowner was "unlikely to encounter any substantial increase in foot or car traffic as a result of the development." *Id.*

While it is true that *Ebersole* reinforced the concept that a "threatened injury must be 'certainly impending' to constitute injury in fact," *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)), the Residents' circumstances are distinct from the homeowner's in *Ebersole*. The record shows that each of the Residents lives within a block of 8383 Keister Road, making them much closer to any impact that the variances will have. Indeed, several of the Residents' properties directly abut the proposed Dollar General site, making their concerns about the Property tied more closely to their own property interests than those of the *Ebersole* plaintiff. Unlike the *Ebersole* homeowner, the Residents have specified how the BZA's variance approval will impact their use and enjoyment of their land. They allege that the variance reducing the required parking spaces will encourage Dollar General shoppers to use the Residents' properties for parking, and the changes to the

landscaping and fencing requirements will make the Dollar General and its traffic more visible to the Residents. The Residents have a legally protected interest in the quiet enjoyment of their property, and their complaint sufficiently alleges that the BZA's approval of the variances will injure that interest.

A legally protected interest for standing purposes, however, does not mean that a plaintiff has a protected property interest sufficient to bring a procedural due process claim. We therefore turn to the merits of the district court's denial of the motion for a preliminary injunction, which we review for abuse of discretion. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007). Four factors guide this review: (1) the movant's likelihood of success on the merits; (2) the risk of irreparable injury to the movant without the injunction; (3) the potential of substantial harm to others from the injunction; and (4) whether the public interest would be served by an injunction. *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). "[T]he party seeking a preliminary injunction bears the burden of justifying such relief." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021) (quoting *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015)). We review the district court's underlying legal conclusions—including its determination on the plaintiffs' likelihood of success on the merits—de novo, *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012), and factual findings for clear error, *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003).

The likelihood of success on the merits of a procedural due process claim is often determinative in this setting. *Obama for Am.*, 697 F.3d at 436; *see also Memphis A. Philip Randolph Inst.*, 2 F.4th at 554. The Fourteenth Amendment of the U.S. Constitution protects individuals from state deprivation "of life, liberty, or property, without due process of law." U.S.

Const. amend. XIV, § 1.  The procedural component of this right requires "that the government provide a 'fair procedure' when depriving someone of life, liberty, or property."  *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).  A successful procedural due process claim requires the plaintiff to show:  (1) a life, liberty, or property interest protected under the Due Process Clause; (2) a deprivation of that interest; and (3) the state's failure to provide adequate procedural rights.  *Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  Each component is necessary.  *Id.*

Critical here is whether the Residents have shown that they have a protected property interest, which is determined based on law outside the federal Constitution, usually state law.  *EJS Props., LLC*, 698 F.3d at 855; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).  A property interest requires more than a unilateral expectation; plaintiffs must point to some law or policy that confers on them the benefit and limits the government's discretion in rescinding that benefit.  *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008) (quoting *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 435 (6th Cir. 2005)).

The Residents point to Ohio law on county zoning boards of appeals as the source of their property interest in whether an adjacent or nearby property receives a zoning variance.  Ohio law provides adjacent landowners certain rights in zoning proceedings and places limits on those allowed to challenge zoning decisions.  Zoning boards must provide notice and a hearing to all interested parties.  Ohio Rev. Code § 303.15.  Adjacent landowners who participated in the administrative hearing may appeal a zoning decision to the Ohio Court of Common Pleas, *id.* § 2506.01; *see Alesi v. Warren Cnty. Bd. Of Comm'rs*, 24 N.E.3d 667, 674 (Ohio 2014); *Willoughby Hills v. C. C. Bar's Sahara, Inc.*, 591 N.E.2d 1203, 1205 (Ohio 1992).  Non-adjacent landowners may also appeal a zoning decision if they experienced a "unique harm that is distinct

from the harm suffered by the community at large" and participated in the administrative process. *Alesi*, 24 N.E.3d at 674. The Residents take these statutory provisions and Ohio case law to mean that there is a default rule under Ohio law that contiguous property owners have a right to challenge variance decisions and that non-contiguous property owners may do the same if a variance uniquely and directly affects them. That right to appeal, they argue, is sufficient to create a protected property interest under state law.

The Residents read these cases too broadly. While the cases do support a presumption that adjacent landowners have administrative standing to challenge a zoning decision after participation in the administrative process, they do not go so far as to create the automatic rule the Residents propose. Instead, Ohio case law establishes that for a contiguous or adjacent property owner to show a property interest in a BZA decision, the property owner must, at the minimum, participate in the administrative process and demonstrate a direct effect from the decision. *See Willoughby Hills*, 591 N.E.2d at 1205. The parties do not dispute that the Board provided legally sufficient notice and that the Residents had an opportunity to be heard. Nevertheless, none of the Residents participated in the hearing.

Our case law supports the determination that further evidence of a property interest is required here. While "a procedural due process claim is 'instantly cognizable in federal court without requiring'" a plaintiff to exhaust administrative remedies, *Braun*, 519 F.3d at 572 (quoting *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 897 (6th Cir. 1991)), a property interest must first exist, *see Nasierowski*, 949 F.3d at 891–93. In the zoning context, we have regarded that to mean that a plaintiff must have taken substantial steps to "securely vest" an interest in the maintenance of a particular zoning classification. In *Nasierowski*, our conclusion that a property owner had a protected property interest in a particular zoning classification hinged

on the fact that the owner had acted in reliance on the prior zoning map, both through administrative work with city departments to get building permits and significant financial investments in the land. *Id.* The changed zoning classification would likely have wiped out those investments. *Id.* In contrast, the dispute here involves no change to the Property's zoning category. *See id.* at 891–92. The parties agree that at all relevant times, 8383 Keister Road was zoned as a B-2 Community Business District. The variances voted on at the BZA hearing did not and could not change the underlying use of the property. The Residents also have not alleged a significant reliance interest on the maintenance of 8383 Keister Road without variances, nor that they took administrative steps to secure that interest. The Residents did not attend the BZA hearing to oppose the variance application, and they have not alleged that they took other actions to oppose or protect against variances to 8383 Keister Road before filing this lawsuit. *See Willoughby Hills*, 591 N.E.2d at 1205.

A more fundamental issue with the Residents' assertion of a property interest in the outcome of the zoning variance decision is that variance decisions are discretionary. The Ohio Supreme Court has explained that zoning boards rule on variance applications "with a wide discretion with which the courts will not interfere unless that discretion is abused." *Schomaeker v. First Nat. Bank of Ottawa*, 421 N.E.2d 530, 535 (Ohio 1981). Determining whether practical difficulties justify a variance for a property is a factual question for the zoning board. *Id.* Because "[t]he law is clear that a party cannot have a property interest in a discretionary benefit," the Residents lack a protected property interest in this case. *EJS Props., LLC*, 698 F.3d at 857; *see also Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002).

The corrupt manner in which the decision was made does not change this analysis. *EJS Props., LLC*, 698 F.3d at 857 ("We do not agree that a benefit ceases to be discretionary depending

on whether the discretion is exercised free of corruption."). Apposite here is *EJS Properties*, in which a company challenged a vote denying the zoning reclassification of a proposed development site. *Id.* at 851. The company had hoped to build a school on the land once the city council approved the zoning change. *Id.* After the company refused a councilperson's instructions to donate to a specific local charity before the vote, however, that councilperson changed his vote and the rezoning request failed. *Id.* at 852–54. The company sued, and the Sixth Circuit affirmed the district court's grant of summary judgment to the city on the constitutional claims despite the apparent corruption behind the decisive city council vote. *Id.* at 866. The court concluded that the company had no property interest in the zoning classification of the land because the decision on how to zone the land was discretionary. *Id.* at 856. "Ohio law states that 'the legislative authority of such municipal corporation *may* amend or change the . . . [zoning] regulations of or within any district," *id.* (alterations in original) (quoting Ohio Rev. Code § 713.10). This "establishes 'sufficient discretion to undercut any argument that the language of the zoning regulations vested in [EJS] an entitlement to'" a particular zoning categorization, *id.* (alteration in original) (quoting *Triomphe Invs. v. City of Northwood*, 49 F.3d 198, 203 (6th Cir. 1995)).

The Residents argue that *EJS Properties* and the other cases Appellees rely upon are inapposite for the simple reason that they all involved *applicants* for discretionary zoning decisions challenging the denial of the zoning board's approval. The Residents, in contrast, are attempting to maintain the status quo, which they argue is not a "discretionary" decision for the BZA. No cases provide direct support for the Residents' argument. Although "[p]roperty owners may have a property interest in the existing zoning classification for their property," *id.* (citing *Nasierowski Bros. Inv. Co.*, 949 F.2d at 897), neither the Sixth Circuit nor Ohio courts have gone so far as to say that property owners have a property interest in the existing zoning classifications of nearby

or neighboring properties. Nor have the courts suggested that property owners have a property interest in a neighboring property's non-variance from applicable zoning requirements.

The Residents have not met their burden of showing a protected property interest in maintaining 8383 Keister Road without the requested variances. The district court was correct to conclude that they are unlikely to succeed on the merits of their claim.

## III. CONCLUSION

We therefore **AFFIRM** the district court's decision.